## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| F. PAUL AUTERY | * | CIVIL NO. 05-0982 |
| VS. | * | JUDGE DOHERTY |
| SMITHKLINE BEECHAM CORPORATION | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

The Motion for Summary Judgment filed by GlaxoSmithKline LLC ("GSK") has

been referred to the undersigned for Report and Recommendation. [rec. docs. 89 and 207].

*Pro se* plaintiff, F. Paul Autery ("Autery") has filed Opposition and a Supplemental

Opposition [rec. docs. 103 and 208] to which GSK has filed a Supplemental Response. [rec.

doc. 212].

For the following reasons, it is recommended that GSK's Motion for Summary

Judgment [rec. doc. 89] be **GRANTED**, and accordingly, that this action be **DISMISSED**

**WITH PREJUDICE**.

## BACKGROUND

The instant lawsuit was filed by *pro se* plaintiff, F. Paul Autery, on June 6, 2005.  In

his complaint, Autery attempts to set forth a  wrongful death claim based on the Louisiana

Products Liability Act ("LPLA").  He seeks damages for the wrongful death of his minor

son, Christopher Michael Bodin ("Bodin"), who allegedly committed suicide on December

30, 2003, seven days after he stopped taking the defendant's drug, Paxil.  Specifically,

plaintiff alleges that Paxil was not approved by the FDA for use in adolescents and that

GSK withheld studies indicating that Paxil offered no benefit to teens, and in some cases, increased the risk of suicide in teens.  [rec. doc. 1, ¶ 4, 5 and 7].

Autery is currently incarcerated at the Louisiana State Penitentiary serving a life sentence for the aggravated rape of a six year old child.  *See State v. Autery*, 2011 WL 798877 (La. App. 3rd Cir. 2011).  The record reveals that Autery was arrested for this offense in late September, 2003, when Bodin was at Autery's home.  Bodin knew the victim well and had a lot of contact with her as she lived next to Bodin.  Bodin was in counseling prior to his suicide; Bodin's counselor opined that Bodin "loved the little girl."  *See* rec. doc. 107-6, pg. 8.

Review of the entire record of these proceedings reveals a lengthy and convoluted history, summarized in pertinent part as follows.  The court initially set the case for trial on December 3, 2007, and, accordingly, the deadline for submission of plaintiff's expert reports was July 17, 2007. [*See* rec. doc. 12].  However, Autery was apparently transferred from the Iberia Parish Prison to the Louisiana State Penitentiary at Angola, and failed to apprise the court of his new address.

Prior to the dismissal of his case pursuant to Fed. R. Civ. P. 41 and/or 16(f) for failure to prosecute, this court issued two Orders requiring a response by Autery. [rec. docs. 14 and 15].  Autery subsequently responded, requesting a continuance of the December 3, 2007 trial date. [rec. doc. 18].  Over the defendant's objection, a continuance was granted, and, accordingly, trial was reset for October 6, 2008. [rec. docs. 20 and 21].

By Amended Scheduling Order, the deadline for submission of plaintiff's expert reports was set for May 20, 2008. [rec. doc. 22].

Although the undersigned initially granted GSK's July 2007 motion to stay discovery until Autery could demonstrate that Bodin was taking Paxil and Autery provided admissible expert opinion testimony to address medical causation issues, the court later vacated that Order on August 16, 2007, allowing discovery to proceed. [rec. doc. 30, 32].  GSK's Motion was formally denied by Ruling dated November 27, 2007, in part because the court's Scheduling Order did not require plaintiff to submit his expert reports until May 20, 2008. [rec. docs. 30, 32 and 61].  In so doing, the court expressly advised that "[s]hould plaintiff fail to submit his [expert] reports within this court's deadlines, the defendant may seek relief via appropriately filed Motion." [rec. doc. 61].

During an April 22, 2008 telephone hearing, Autery advised the court that he was not requesting an extension of the expert deadline because it was his intention to amend his complaint to allege causes of action which did not require expert testimony.  Autery was advised that the court would not extend the expert report deadline if requested and, further, that there was a deadline for amended pleadings.  Autery acknowledged his understanding. [*See* rec. doc. 107-2, pgs. 35-36 and 39-43].  The deadline for amending pleadings was May 20, 2008.  [*See* rec. doc. 22].

When Autery failed to provide any expert reports prior to this court's deadline, on May 23, 2008, GSK filed the instant Motion for Summary Judgment, arguing that in the

absence of expert evidence, Autery could not satisfy his burden of establishing causation under Louisiana law.[1] [rec. doc. 89].

In response, Autery filed a flurry of pleadings, including an untimely Motion for Leave to Amend his Complaint.[2]  In his Motion, Autery attempted to assert claims against GSK for fraudulent concealment, misrepresentation, "overpromotion", "unreasonably dangerous because of an inadequate warning", "design defect of the product" and "comparative fault".  [rec. doc. 96].

Autery also filed Opposition to the Motion for Summary Judgment, in which he alleged that he tried to "locate" an expert witness, but that his attempts had been unsuccessful.  He further argued that he had not received sufficient discovery from GSK to enable him to obtain an expert report from any as of yet un-retained expert witness. Finally, Autery argued that by Amended Complaint he had asserted claims which "would not fall under the category that would need an expert witness or report, so that his action could proceed even if the "product liability portion" of the lawsuit was dismissed. [rec. doc. 103]

Although Autery's prior Motion for Appointment of counsel had been denied, Autery filed a second Motion for Appointment of Counsel. [rec. docs 44 and 97].  In light of the

---

[1]Autery has invoked this court's diversity jurisdiction under 28 U.S.C. § 1332. Accordingly, the substantive law of Louisiana, the forum state, applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Woodfield v. Bowman*, 193 F.3d 354, 359 fn.7 (5th Cir. 1999).

[2]That pleading bears a postmark of May 30, 2008 and certificate of service dated May 29, 2008; accordingly, although the pleading was not received by the Clerk until June 2, 2008, under the "mailbox rule" the court's docket reflects May 30, 2008 as the filing date. [rec. doc. 96 and 100, pg. 3-4].

technical nature of the defendant's pending Motion for Summary Judgment, District Judge Doherty requested the undersigned to determine if counsel should be appointed. The undersigned therefore conducted a full review of the evidence and factors permitting appointment of counsel.

By Ruling dated September 11, 2008, the undersigned noted the "numerous legal and factual issues which have arisen" in the case[3], Autery's need for assistance to properly present that which has been obtained through discovery to the court, noting the evidence presented thus far was subject to conflicting interpretation, while also being mindful of the procedural posture of the case and the concerns of the defendant in the speedy resolution of this lawsuit, and in protecting its interests and avoiding undue litigation expenses.

Accordingly, the undersigned appointed attorney Christopher T. Lee ("Lee") for the sole purpose of filing an appropriate Opposition to the currently pending Motion for Summary Judgment based on the record presently before the court, after consultation with Autery. The Order appointing Lee expressly provided that Lee was not required or expected to retain or hire any experts on Autery's behalf, nor was Lee required or expected to invest any funds in the further prosecution of this case. Rather, Lee's role was to be limited to reviewing discovery already obtained in the litigation and to file an appropriate response to

---

[3]These issues included "whether plaintiff may be able to prove not only general, but also specific causation, given the above referenced documents and Bodin's alleged non-compliance with his Paxil treatment regimen and his father's September 2003 arrest and subsequent conviction for the rape of a minor . . . the timing, disclosure and proper interpretation of the studies performed by the defendant, and the content and timing of warnings issued to physicians and the public about the use of Paxil in adolescents." [*See* rec. doc. 112, pg. 7].

the pending Motion for Summary Judgement.  [rec. doc. 112].   It was therefore, the

intention of the court that Lee review the discovery to determine whether, in the absence of

expert testimony, this action could go forward.  While he was not required to do so, Lee

accepted this court's request that he represent Autery on this limited basis.  Lee agreed to do

so *pro bono*.

Following a status conference on October 8, 2008, the Motions filed by plaintiff prior

to Lee's appointment were subsequently dismissed without prejudice, reserving Lee's right

to re-urge any Motion in the event that a ruling became necessary. [rec. doc. 116].  A

deadline of February 19, 2009 was set for Lee to file any Motions he deemed necessary.

[rec. doc. 118].  Thereafter, in an abundance of caution and apparently at  the insistence of

Autery, who apparently did not understand Lee's limited role in this action (or failed to

accept it), Lee filed a Motion to Re-urge all of the Motions previously filed by Autery. [rec.

doc. 120].  In denying that Motion, the court clarified Lee's limited role in the litigation, that

is, to oppose the defendant's Summary Judgment Motion based on the record presently

before the court.

In order to fulfill that obligation Lee was permitted to file a motion to compel

discovery previously requested by plaintiff and to seek additional discovery, limited solely

to that which is needed to reasonably oppose the pending Motion for Summary Judgment.

The court again also clarified that Lee was not required to retain experts on behalf of

Autery; rather, Lee was to obtain and review the discovery in the case to prepare an

appropriate opposition to GSK's pending Motion for Summary Judgment.  Accordingly, the

court expressly stated that it would not entertain any other motions, and, more specifically, would not entertain any motion for an extension of plaintiff's expert report deadline or any motion for amendment of the pleadings. [rec. doc. 125]. Plaintiff's appeal of the undersigned's ruling was denied by Judge Doherty. [rec. doc. 166].

Thereafter, Lee filed a Motion to Compel and Autery filed a Motion to Supplement the Motion to Compel filed on his behalf by Lee.[4] [rec. docs. 129 and 133]. The undersigned granted in part and denied in part these Motions by Order dated June 22, 2009; Autery's *pro se* Motion for "clarification" was denied. [rec. docs. 154 and 156]. Judge Doherty remanded the matter to the undersigned for entry of written reasons for Ruling; Reasons for Ruling were subsequently issued. [rec. docs. 167 and 168]. Autery's appeal of the undersigned Ruling was denied by Judge Doherty on April 16, 2010. [rec. doc. 170].

Thereafter, Autery filed, under seal, a Motion seeking appointment of "substitute counsel" to replace court appointed counsel, Lee, and, additionally, seeking court permission to propound additional discovery directly on the defendant. [rec. doc. 172]. That Motion was denied by Order filed under seal. Without revealing any confidential or privileged information, the court, in essence, found that Lee had taken those steps necessary to accomplish the goal of his limited appointment, within the confines of the Rulings and Orders of this court, and had zealously and effectively represented Autery in this litigation, and, accordingly, denied Autery's request for different court appointed counsel.

[4]At the request of counsel, the court agreed to consider those items contained in the *pro se* Motion, only to the extent that those items were not encompassed by the requests previously presented by counsel and only to the extent that they were necessary for the proper disposition of the pending Motion for Summary Judgment. [*See* rec. doc. 151].

Autery's Motion with respect to discovery was denied as an untimely attempt by Autery to circumvent this court's prior rulings and reopen discovery, which was closed by virtue of the court's previous rulings, and as an improper attempt to relitigate those issues which had already been finally determined by the court.[5] [rec. doc. 173].

GSK then filed a Motion for Protective Order. [rec. doc. 174].  At the hearing on that Motion, Lee opposed the protective order insofar as Autery would not be permitted to retain copies of the documents which were the subject of the Motion at the Louisiana State Penitentiary.  The court ordered GSK to produce the alleged confidential documents at issue to plaintiff's court appointed counsel, Lee, as well as redacted copies of those documents alleged to contain material protected by the attorney-client privilege.  GSK was also ordered to  provide the court with unredacted copies of those documents, for ruling on the assertion of the attorney-client privilege. [*See* rec. docs. 175].  GSK complied with this court's Orders. [rec. doc. 176].  In the interim, Autery filed a Motion for Leave to file Opposition to the Motion for Protective Order[6] [rec. doc. 177], followed by a Memorandum in Opposition with exhibits thereto.  [rec. docs. 180 and 181].

---

[5]The undersigned had ruled on all discovery issues, requests and motions, and the undersigned's rulings in that regard had been upheld by Judge Doherty on Appeal. [*See* rec. docs. 129, 133, 149, 151, 154, 157, 164, 167, 168, 170].  Moreover, the court noted that Autery had attended the telephone hearing on the Motions to Compel, and at that time was advised by the undersigned as to the scope of discovery which would be permitted. [*See* rec. doc. 154].

[6]While there has been no formal ruling on Autery's Motion for Leave, in light of the Opposition which has been filed by Autery, the Motion for Leave to file Opposition  is clearly moot.

It was plainly obvious from the record before this court that although Autery sought

assistance of counsel, Autery never permitted counsel to act on his behalf.  Instead, Autery

continued to file *pro se* pleadings and insisted that he attend all hearings.  Additionally

Autery repeatedly attempted to expand Lee's limited role and to avoid previous rulings of

this court.  Autery effectively never allowed Lee to fulfill the limited scope of his

appointment. [*See* rec. docs. 114, 132, 133, 134, 137, 141, 142, 152, 155, 164, 172, 177,

178, 180, 181, 183, and 184].

Accordingly, while Lee was reviewing the discovery materials in order to determine

an appropriate opposition to the pending Motion for Summary Judgment, Lee filed a Motion

to Withdraw as counsel for Autery, citing "recent events and recent filings", the difficulty

that Lee experienced in attempting to fulfill his fiduciary and professional obligations, and

the fact that "the representation had been rendered unreasonably difficult and impossible."

[rec. doc. 186].  Although Autery was granted an opportunity to file Opposition to the

Motion prior to the November 22, 2010 hearing date, he failed to do so. [rec. doc. 193].

At the conclusion of a sealed hearing at which Autery was present, by telephone, for

the reasons set forth on the record and noting the comments made by Autery in his pleadings

filed under seal with this court [rec. docs. 178 and 183], Lee was relieved of his duties and

responsibilities in this case.

Furthermore, to the extent that Autery sought substitute counsel, that request was

denied.  The deadline for Autery to file Opposition to the instant Motion for Summary

Judgment was set for December 13, 2010.  [rec. doc. 198].  Judge Doherty denied Autery's

appeal of that ruling. [rec. doc. 207].  Autery's appeal to the Fifth Circuit was dismissed for

lack of jurisdiction on March 2, 2011. [rec. doc. 223].

As set forth above, Autery filed Opposition to the instant Motion for Summary

Judgment on June 9, 2008, prior to Lee's limited appointment in this case. [rec. doc. 203].

Since Lee's withdrawal, Autery has filed a Supplemental Opposition to the Motion for

Summary Judgment in accordance with the court ordered deadline for filing  Opposition.

[rec. doc. 208].  Autery additionally filed a Motion for Extension of Time to file Opposition

requesting until January 3, 2011 to file Opposition because he was working on his criminal

appeal and wanted his brief to this court typed, and, thereafter, a Motion to Stay the

Deadline for filing Opposition pending a final ruling by this court on his request for

substitute counsel (which at that time was pending before Judge Doherty) and "until a ruling

is made on all the outstanding motions related to the opposition to the Defendant's Motion

for Summary Judgment."[7]  [rec. docs. 202, 205].

In his Supplemental Opposition, Autery again argues that an expert report could not

be prepared because GSK has not  produced documents requested by him in discovery and

that the documents which were produced are "unreliable and need to be individually verified

---

[7]Because Autery has filed Opposition to the Motion and only requested an extension through January 3,
2011 to file Opposition, which has long since passed, it appears that Autery's Motion for Extension in moot.
Moreover, it appears that Autery's Motion to Stay is likewise moot because this court has made a final determination
of Autery's request for substitute counsel. To the extent that there has been no formal ruling on GSK's Motion for
Protective Order, for the reasons set forth in the body of this Report and Recommendation and those set forth below
in footnote 7, such a ruling is not necessary for the proper disposition of this Motion.

and or replaced by GSK." Autery further argues that based on the documents he has obtained, his lawsuit has merit. [rec. doc. 208].

GSK has filed a Supplemental Response in which it argues that despite the fact that this case has been pending for years, Autery has never procured any expert to establish causation in this case. More specifically, GSK argues that additional document discovery will not cure this defect because although additional documents may help to establish general causation, Autery nevertheless cannot establish specific causation as required by law. [rec. doc. 209].

**LAW AND ANALYSIS**

**Standard on Motion for Summary Judgment**

Fed. R. Civ. P. 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(e) provides, in pertinent part, as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

GSK's Motion for Summary Judgment is properly made and supported. Thus, Autery may not rest upon the allegations in his pleadings, but, rather, must go beyond the

11

pleadings and designate specific facts demonstrating that there is a genuine issue for trial.

*Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

Additionally, summary judgment is mandated against a party who fails to make a

showing sufficient to establish an essential element of that party's case, and on which that

party will bear the burden of proof at trial.  *Celotex*, 106 S.Ct. at 2552.

Autery has submitted evidence in opposition to the instant Motion.  However,

Autery's evidence fails to demonstrate that there is a genuine issue of material fact

necessitating a trial on his claim against GSK.  More specifically, Autery has failed to

demonstrate that he can carry his burden of proving specific causation at trial.  Accordingly,

and for the reasons which follow, the undersigned recommends that GSK's Motion for

Summary Judgment be granted.

**Plaintiff's Burden under the Louisiana Products Liability Act**

In this case, Autery alleges that his fifteen year old son's suicide, seven days after he

stopped taking Paxil, was caused by his ingestion and cessation of Paxil.  More specifically,

Autery alleges that GSK violated the LPLA by failing to warn of an unreasonably dangerous

condition of its product, Paxil, namely, that Paxil was not approved for use by adolescents

and that it may increase the risk of suicide in adolescents.

Under Louisiana jurisprudence, the plaintiff in a product liability suit under the

LPLA, bears the burden of proving, by a preponderance of the evidence, a causal

relationship between his injury and the use of the product. *Kemp v. Metabolife International,*

*Inc.*, 2004 WL 2009, *3 (E.D. La. 2004) *citing Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La.2/20/95), 650 So.2d 757, 759; *Smith v. Glaxosmithkline Corp.*, 2008 WL 4938426, *2 (E.D. La. 2008). The test for determining the causal relationship between the use of the product and subsequent injury is whether the plaintiff proves through medical testimony that it is more probable than not that the subsequent injuries were caused by the use of the product. *Id.*

Proof of causation has two components, general and specific. *Kemp* 2004 WL 2009 at *3 *citing Pick v. American Medical Systems, Inc.*, 958 F. Supp. 1151, 1164 (E.D. La.1997); *Smith*, 2008 WL 4938426 at *2. General causation deals with whether the substance at issue can cause diseases or disorders in people in general. *Id.*  Specific causation focuses upon whether the substance was *in fact* the cause of the ailments or symptoms in the particular patient. *Id.*  An inability to establish specific causation is fatal to a plaintiff's claim. *Kemp,*2004 WL 2009, *3  *citing Pick*, 958 F. Supp. at 1163; *Smith*, 2008 WL 4938426 at *2. Thus, in this case, Autery bears the burden of proving that Paxil is capable of creating a reaction in an adolescent to induce an adolescent to commit suicide (general causation) *and* that Paxil did, *in fact*, cause Autery's son to commit suicide (specific causation).

In cases such as this, involving complex issues of medical causation that are beyond the realm of knowledge and experience of the ordinary juror, expert testimony must be presented by the plaintiff to prove specific causation. *Id*. *citing Pick*, 958 F. Supp. at 1164; *Waters v. Bayer Corp.*, 2006 WL 725820, * 2 (W.D. La. 2006) *citing Pfiffner v. Correa*, 643

So.2d 1228, 1234-35 (La. 1994); *Hebert v. Miles Pharmaceuticals*, 1994 WL 10184, \*3

(E.D. La. 1994); *Smith,* 2008 WL 4938426 at \*2; *Pennington v. Vistron Corp*., 876 F.2d

414, 425-426 and fn. 14 (5th Cir. 1989).  Accordingly, courts routinely dismiss product

liability cases in which expert testimony on causation is lacking.  *See Kemp*, 2004 WL

2095618 at 5-6; *Pick*, 958 F. Supp. at 1164 and 1173;  *Waters*, 2006 WL 725820 at \* 2-3; *In

re: Propulsid Products Liability Litigation*, 261 F. Supp.2d 603, 618 (E.D. La. 2003);

*Hebert*, 1994 WL 10184 at \*3-4; *Smith*, 2008 WL 4938426 at \*2-3; *Pennington*, 876 F.2d at

425-426.  *See also Christophersen v. Allied-Signal Corp*., 939 F.2d 1106 (5th Cir. 1991),

*abrogated on other grounds by Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S.

579 (1993) (Texas law); *Cloud v. Pfizer, Inc*., 198 F. Supp.2d 1118, 1137-1139 (D. Ariz.

2001) (granting summary judgment under Arizona law because, even assuming medical

articles support a finding of general causation, the plaintiff failed to present expert testimony

that Zoloft (an antidepressant drug like Prozac) specifically caused the decedent to commit

suicide.).

It is undisputed that, despite the fact that this action has been pending for over five

years, Autery has never identified any expert who may provide either a report or testimony

on his behalf.  To the contrary, in his original Opposition to the instant Motion, Autery

frankly acknowledged that, despite his best efforts, he has never even obtained the name of

an expert who may be able to assist him in this litigation.  It is further beyond question that

Autery has been aware of the need for expert testimony on the issue of medical causation

since 2007, when GSK filed its motion to stay discovery until Autery could provide admissible expert opinion testimony to address medical causation issues.

While the undersigned is sympathetic to Autery's status, being both incarcerated and proceeding *pro se*, that does not relieve him of his responsibility to comply with court ordered deadlines.  It is abundantly clear in this case that Autery has failed, not only to provide the defense any expert report in support of his claim prior to this Court's deadline, but also failed to even obtain the name of an expert who would testify in support of petitioner's position.  No additional documents requested, received or yet to be received via discovery can compensate for this basic deficiency.

Furthermore, while Autery suggests that he cannot provide an expert report without obtaining more documents from GSK, that claim cannot be accepted by the court at this stage of the litigation.  As GSK correctly notes, while additional documents may prove helpful in satisfying plaintiff's burden of demonstrating general causation, additional documentation will provide no support for a finding of specific causation in this case.  This is particularly true, given that Autery has never found, consulted with, or retained, an expert, to whom he could provide the multitude of documentation obtained, or purportedly sought, for preparation of an expert report.[8]

---

[8]The undersigned notes that Autery has not been provided with various documents which are the subject of GSK's pending Motion for Protective Order. [*See* rec. doc. 174 and 175].  However, review of the documents provided by GSK to the court for *in camera* inspection provide no support for a finding of specific causation in this case, and,  further appear to contain material protected by the attorney-client privilege.

Moreover, from the description of the redacted documents provided by GSK to Autery's former counsel, Lee, it is clear that these documents likewise do not address specific causation. [*See* rec. doc. 174].

Finally, the court was informed by personnel at the Legal Department of the Louisiana State Penitentiary that there is no area for inmate document storage in the legal department, much less any secure area where the confidentiality of the documents may be maintained.  While each inmate is permitted two locker boxes in his cell,

Furthermore, the undersigned has reviewed the depositions of Bodin's pediatrician, Jibran Atwi, M.D., and therapist, Cindy Cross Hayes, the only two witnesses who could possibly provide expert testimony in this case.  Neither deponent addresses the specific causation issue; neither Dr. Atwi nor Ms. Hayes has testified that they believe Bodin committed suicide as a result of his having taken, or his having ceased taking, Paxil.

To the contrary, Ms. Hayes' testimony, cited above, suggests the opposite, that Bodin's suicide may well have resulted from his knowledge of the criminal accusations lodged against his father, Autery.  Ms. Hayes testified that when she saw Bodin after Autery's arrest she would "never forget how he [Bodin] looked that day."  Ms. Hayes described Bodin as looking "almost like he was physically ill.  His shoulders were slumped. Obviously he had a depressed affect.  Sighing a lot, you know, we didn't - - he was sad.  He was despondent.  He looked beaten down.  He just was - - it was just really pathetic.  I guess was like what you would expect a child to look like if they had witnessed their dad being arrested for aggravated rape of a 6-year-old." [rec. doc. 107-6, pg. 9].

Moreover, Dr. Atwi testified that he had no reports of Bodin having suffered any discontinuation symptoms on the occasions when his mother was unable to purchase Paxil

---

these boxes are insufficient to store the voluminous documents received in connection with this litigation.  With respect to confidentiality, the inmate cells are subject to random search, and, to the extent that a copy of any document is desired, the document would have be sent through un-secure channels to inmate counsel for copying. Finally, when inmates are placed in administrative segregation, as Autery has been in the past, the documents stored by the inmate in his cell are transferred to an archive building where they are virtually inaccessible to the inmate.
        As such, while withholding formal ruling on GSK's Motion, it would be clearly impracticable, if not impossible (as well as unfair), for this court to order GSK to provide copies of these redacted documents to Autery, given that they provide no support for a finding of specific causation in this case.

for Bodin, and, further, that Bodin was doing well on the medication and that it was not ineffective in his case. [rec. doc. 107-5, pg. 16-17, 25, 28].

Finally, while Autery argues that the claims he attempted to assert by proposed amended complaint require no expert testimony as they do not fall under the "product liability portion" of the lawsuit, Autery's argument is legally wrong.  As noted above, those claims included fraudulent concealment, misrepresentation, "overpromotion"and "comparative fault."   Becuase Autery alleges that GSK's product caused the injury for which he seeks damages, the LPLA controls this case.  *Ridgeway v. Pfizer, Inc.,* 2010 WL 1729187, *2 (E.D. La. 2010) *citing Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995) (holding that the LPLA applies to products-liability actions that accrued on or after September 1, 1988).  The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the Act]." La. R.S. § 9:2800.52; *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002); *Ridgeway,* 2010 WL 1729187 at *2.

Thus, to the extent that Autery attempted to defeat summary judgment by filing an amended complaint asserting theories of liability which are outside the limits of the LPLA, that attempt fails.  *See Stahl*, 283 F.3d at 261-262 *citing Jefferson v. Lead Indus. Assoc.*, 930 F. Supp. 241, 245 (E.D. La. 1996) (noting negligence, strict liability, and breach of warranty are not available as theories of liability against a manufacturer, independent from the LPLA

and "there is no 'intentional acts' exception to the exclusive remedy provision of the

LPLA"); *Jefferson v. Lead Indus. Ass'n, Inc*., 106 F.3d 1245, 1251 (5th Cir. 1997)

(incorporating the lower court ruling as its opinion, noting that negligence, fraud by

misrepresentation, civil conspiracy and breach of implied warranty are not available under

the LPLA); *Brown v. R.J. Reynolds Tobacco Co.*, 852 F. Supp. 8, 9 & n .1 (E.D. La.1994)

(noting that claims of fraudulent misrepresentation, concealment, and conspiracy had been

dismissed as falling outside scope of the LPLA), *aff'd,* 52 F.3d 524 (5th Cir. 1995);

*Ridgeway,* 2010 WL 1729187 at *2 (dismissing claims based on negligence and intentional

torts because they fall outside the LPLA).

 In light of the above, Autery has failed to make a sufficient showing to establish the

essential elements of his LPLA claim, and more specifically, the element of specific

causation. *Celotex, supra*.   Summary Judgment is therefore required.

## CONCLUSION

 For the reasons stated above, **IT IS RECOMMENDED** that GSK's Motion for

Summary Judgment [rec. doc.89] be **GRANTED**, and accordingly, that this action be

**DISMISSED WITH PREJUDICE**.

 Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the clerk of court. A party may

respond to another party's objections within fourteen (14) days after being served with a

copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

A courtesy copy of any objections or responses shall be provided to the District Judge at the time of filing.

Signed this 12th day of April, 2011, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE